UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JESSICA C. FOSTER,

             Plaintiff,

      v.                                     21-CV-36-LJV
                                           DECISION & ORDER

ZONES /E. NFASTRUCTURE
TECHNOLOGIES, INC.,

             Defendant.

_____

On January 8, 2021, the *pro se* plaintiff, Jessica C. Foster, commenced this
action, asserting claims under the Americans with Disabilities Act of 1990 ("ADA") and
the New York State Human Rights Law ("NYSHRL").[1]  Docket Item 1.  On July 30,
2021, the defendant, nfrastructure Technologies, LLC[2] ("nfrastructure"), moved to
dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), Docket
Item 11; on August 25, 2021, Foster responded, Docket Item 16; and on September 7,
2021, nfrastructure replied, Docket Item 19.  Foster also has asked this Court to excuse
her for filing her response two days late, Docket Item 18; to grant her access to

_____

[1] A portion of Foster's complaint was partially cut off, *see* Docket Item 1 at 5, and
the Court directed her to refile so that all the factual allegations on page 5 of her
complaint were included, *see* Docket Item 3.  On March 24, 2021, Foster therefore filed
a more legible amended complaint.  Docket Item 5.

[2] The defendant was incorrectly named as Zones/E. Nfastructure Technologies.
Its correct name is nfrastructure Technologies, LLC.  *See* Docket Item 12 at 5.  The
Clerk of the Court shall correct the case caption accordingly.

CM/ECF so that she may file documents with the Court electronically, Docket Item 17; and to appoint counsel for her, Docket Item 21.

For the following reasons, Foster's motion to accept her late-filed response is granted, but nfrastructure's motion to dismiss will be granted unless Foster supplements her amended complaint to demonstrate that her ADA claims are not time barred. Foster's motions for CM/ECF access and appointment of counsel are denied without prejudice.

## FACTUAL BACKGROUND

Foster was hired by nfrastructure on November 7, 2017.[3]  Docket Item 5 at ¶ 4. In December 2017, Foster first told her manager, Jason Franco, that she had a disability.  *Id.* at ¶ 21.[4]  Nearly a year later, in November 2018, Foster asked for reasonable accommodations, *id.* at ¶ 22; as a result, nfrastructure "reduced [her] to a part-time schedule of 30 hours per week" and gave her "Thursdays off for [o]utpatient [t]herapy," *id.* at ¶ 23.  But those accommodations proved to be ineffective.  *Id.* at ¶ 24.

In January 2019, Foster sought additional reasonable accommodations.  *Id.* at ¶ 19.  She asked Kristen Strangler, apparently a supervisor, whether she could "perform . . . off the phone work," such as "emails, voicemails, [and] tickets."  *Id.*  Strangler

---

[3] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).

[4] The amended complaint contains duplicative paragraph numbers 16 through 21.  *See* Docket Item 5 at 5-6.  All citations are to the first set of paragraph numbers on page 5 of the amended complaint.

denied the request, stating that such accommodations would cause "undue hardship" on the company. *Id.* But three other employees were allowed to perform the work that Foster had requested as an accommodation. *Id.*

In June 2019, Foster asked Franco and someone named "Cara"[5] about "the status of [her] raise" and "was informed that [she] did not qualify [for a raise] due to [her] absences" from work. *Id.* Later, she learned that those absences were days that she took under the Family and Medical Leave Act ("FMLA") as a reasonable accommodation in November 2018.[6] *Id.*

On November 4, 2019, nfrastructure terminated Foster while she was "on . . . medical leave." *Id.* Foster's doctor had requested that Foster's "short term disability . . . be extended to January 2020" so she could "complete her [i]ntensive [o]utpatient [p]rogram," but nfrastructure denied the request, "stating that [Foster] was not a qualified individual with a disability." *Id.*

---

[5] Foster does not provide Cara's full name or position. Docket Item 5 at ¶ 19. The Court assumes that Cara was another manager or supervisor.

[6] In her amended complaint, Foster alleges that in June 2019 she did not qualify for a raise due to her FMLA absences taken as a reasonable accommodation in November 2019, Docket Item 5 at ¶ 19; of course, that is impossible since November 2019 is five months after June 2019 and since Foster also alleges that nfrastructure terminated her employment on November 4, 2019, *id.* at ¶¶ 7, 19. It appears that November "2019" is a typographical error, and that the correct date is November 2018, the time when nfrastructure granted Foster Thursdays off and a reduced schedule as a reasonable accommodation, *see id.* at ¶¶ 22-23. "Allowing for an honest mistake in the pleadings is within the court's discretion . . . ." *Soto v. Wright*, 2013 WL 474291, at *1 n.1, (S.D.N.Y. Feb. 1, 2013); *see also Balestriere PLLC v. CMA Trading, Inc.*, 2014 WL 929813, at *13 n.15 (S.D.N.Y. Mar. 7, 2014) (correcting *pro se* plaintiff's references to a June 28, 2010 delivery to be a June 28, 2011 delivery, in accordance with the timing of other events alleged). And so the Court deems that mistake to be corrected.

Foster then filed an Equal Employment Opportunity Commission ("EEOC") charge, and the EEOC issued a "right-to-sue" letter and notice.[7]  *Id.* at 8-9.  The notice instructed Foster that any lawsuit she may wish to file "under federal law . . . **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost."  *Id.* at 9 (bold emphasis, capitalization, and underlining in original).  The letter was dated September 24, 2020, *id.* at 8, but Foster did not receive it until a few days later.  In her amended complaint, Foster alleges that she received it on September 27 or 28, 2020.  *Id.* at ¶¶ 12, 18.  But in an unsigned affirmation attached to her response to the motion to dismiss, Foster states "that to the best of [her] knowledge[, the letter] was not received . . . September 27-28, 20[20], but weeks later due to a delay in mail delivery to [her] residence in rural South Carolina as a result of the COVID-19 pandemic."  Docket Item 16 at 32.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a

---

[7] On a motion to dismiss, the Court may consider any written documents that are attached to a complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Here, the EEOC right-to-sue letter and notice are all three.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

## **DISCUSSION**

### I.   **MOTION FOR EXCUSABLE NEGLECT**

Before addressing the motion to dismiss, this Court must consider Foster's motion under Federal Rule of Civil Procedure 6(b)(1)(B) to excuse the late filing of her response because of excusable neglect, Docket Item 18.  More specifically, Foster asks this Court to excuse her for filing her response to the motion to dismiss two days late, *see* Docket Items 15 and 16, and to consider her response in deciding the motion to dismiss.  Docket Item 18.  The defendant opposes this request and asks this Court to deem its motion to dismiss unopposed.  *See* Docket Item 19 at 7-9.

Under Rule 6(b)(1)(B), a "court may, for good cause, extend the time" for a party to act if the party failed to act due to "excusable neglect."  "'[E]xcusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of" the party seeking relief.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993).  "Rather, it may encompass delays 'caused by inadvertence, mistake, or carelessness,' at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and [the]

movant's excuse has some merit." *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (citations omitted).

There is indeed good cause to grant Foster's motion to consider her late-filed response.  First, the delay was not long:  Foster was merely two days late.  *See* Docket Items 15 and 16.  Second, there is no reason to believe that the delay was the result of any bad faith.  Third, nfrastructure was not prejudiced and submitted a reply a short time later—on September 7, 2021.  *See* Docket Item 19.

Fourth, and perhaps most significantly, Foster offers an excuse with some merit: due to her rural residence and "current financial status," it is "very difficult [for Foster] to access any mailing services."  Docket Item 18 at 2.  And this Court previously acknowledged Foster's financial status when it granted her motion to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the ordinary filing fee waived because she cannot afford it).  *See* Docket Item 3.

The defendant argues that Foster's motion should be denied because she failed to explain why she could not and did not reach out to nfrastructure about an extension before the deadline.  Docket Item 19 at 8-9.  At best, nfrastructure's argument suggests that Foster was careless when she failed to ask for an extension.  What is more, Foster is proceeding *pro se* and may not be aware of customs or practices that are second nature to attorneys.

In any event, this Court may excuse even those delays that are careless.  *See LoSacco*, 71 F.3d at 93.  Foster's motion is therefore granted, and her response to nfrastructure's motion to dismiss is deemed timely.

II.   **MOTION TO DISMISS**

The Court now turns to nfrastructure's motion to dismiss, Docket Item 11.  The

defendant argues, among other things,[8] that Foster's ADA claims must be dismissed

because they are time barred.  Based on the current record, this Court agrees.

ADA claims must be filed in federal court within 90 days of the claimant's receipt

of a right-to-sue-letter from the EEOC.  *See* 42 U.S.C. § 12117(a) (incorporating the

limitations period set forth in 42 U.S.C. § 2000e-5(f)(1)).  The 90-day period is

measured in calendar, not business, days.  *Carpenter v. City of New York*, 2011 WL

2118599, at *2 (W.D.N.Y. May 25, 2011).  And the deadline is strict.  *See Manley v.*

*New York City Police Dept.*, 2005 WL 2664220, at *3-5 (E.D.N.Y. Oct. 19, 2005)

(dismissing *pro se* plaintiff's claims as untimely where plaintiff filed complaint 91 days

after receiving the right-to-sue letter); *see also Hughes v. Elmira Coll.*, 584 F. Supp. 2d

588, 590 (W.D.N.Y. 2008) (same).  In fact, "[i]n the absence of a recognized equitable

consideration, the court cannot extend the limitations period by even one day."  *Johnson*

*v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984).  And equitable

tolling is appropriate only in "rare and exceptional circumstances in which a party is

prevented in some extraordinary way from exercising [her] rights."  *Zerilli–Edelglass v.*

*New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alterations, citations, and

internal quotation marks omitted).

---

[8] Because it appears that Foster's claims are time barred, this Court declines to reach nfrastructure's remaining arguments for dismissal at this time.  If Foster supplements her amended complaint, the defendant may move to dismiss again and raise any arguments addressed in its previous motion.

"The equitable considerations that have been recognized as justifying tolling the limitations period have been applied sparingly." *Nearhood v. Tops Mkts.*, *Inc.*, 76 F. Supp. 2d 304, 306 (W.D.N.Y. 1999). "[T]he Supreme Court has recognized only four situations justifying equitable tolling of Title VII's time limits: (1) where a claimant receives inadequate notice of the right to sue; (2) where circumstances justify tolling while a claimant's motion for appointment of counsel is pending; (3) where the court has led a plaintiff to believe she has done everything required of her; or (4) where affirmative conduct by the defendant has lulled the plaintiff into inaction." *Coffey v. Donahoe*, 2013 WL 3244788, at *5 (W.D.N.Y. June 26, 2013) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)).

In her amended complaint, Foster pleaded that she received the right-to-sue letter on September 27 or 28, 2020. Docket Item 5 at ¶¶ 12, 18. But in her response to nfrastructure's motion to dismiss, Foster says that she is not sure when she received the letter. She now asserts that she "may have received the [right-to-sue] letter on or about September 27-28, 2020," but she also "believes it was much later due to mail delivery delays." Docket Item 16 at 14.

When a right-to-sue letter's receipt date is unknown, courts generally presume that the letter was received three days after it was mailed. *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996). Likewise, unless there is a reason to think otherwise, courts presume that the EEOC mailed the right-to-sue letter on the date shown on the letter. *See id.* Here, using the date of the right-to-sue letter—that is, September 24, 2020, *see* Docket Item 5 at 8—and presuming that Foster received it

three days later on September 27, 2020, her suit filed on January 8, 2021, is untimely[9] because it was filed on the 103rd day after the right-to-sue letter was received.

The three-day presumption is not absolute.  Indeed, it may be rebutted by "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [the claimant] by mail."  *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (quoting *Sherlock*, 84 F.3d at 526).  But unsworn statements styled as a motion and memorandum of law are inadmissible and insufficient to rebut to rebut the three-day presumption.  *Hughes*, 584 F. Supp. 2d 588 at 590 (collecting cases).  And mere confusion and doubt about the date a claimant received a right-to-sue letter are insufficient as well.  *See Colon v. Sabic Innovative Plastics US, LLC*, 2017 WL 3503681, at *4 (N.D.N.Y. Aug. 15, 2017) (plaintiff's inability to recall when she received right-to-sue letter was insufficient to rebut the three-day presumption); *Edwards v. Onondaga Cmty. Coll.*, 2015 WL 7283187, *4 (N.D.N.Y. Nov. 16, 2015) (evidence showing plaintiff's "own lack of recollection" or a "mere denial of receipt" insufficient to overcome three-day presumption) (quoting *Sherlock*, 84 F.3d at 526).  Therefore, even crediting Foster's unsworn statement that she "may have received [the letter] on . . . September 27-28, 2020," but "believes it was much later," Docket Item 16 at 14,[10] her uncertainty about when she received the letter fails to rebut the three-day presumption and make her complaint timely.

---

[9] The complaint also is untimely if the Court uses September 28, 2020, the latest date noted in Foster's amended complaint, *see* Docket Item 5 at ¶ 18.

[10] Foster also attaches an affirmation to her response to the motion to dismiss, repeating her assertion that the letter was received weeks later.  Docket Item 16 at 32.

Foster argues that even if she received the right to sue letter on September 27-28, 2020, the Court should deem her complaint timely because "she thought she had 90 business days," not calendar days to file her complaint, which would have made her complaint timely if filed by January 29, 2021.  Docket Item 16 at 15.  But such an excuse is insufficient to merit equitable tolling.[11]  *Manley*, 2005 WL 2664220, at *4.  "A decision to simply act upon the assumption that a longer period of limitations applied, without obtaining clarification of the rule," is nothing more than "a 'garden variety claim of excusable neglect' which the Supreme Court has held insufficient to merit equitable tolling."  *Id.* (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)); *see also Bethlemie v. New York City Health & Hosp. Corp.*, 2001 WL 863424, at *3 (S.D.N.Y. July 31, 2001) (equitable tolling not merited when *pro se* plaintiff thought 90-day period excluded weekends because "the mere fact that [plaintiff] may have inferred as much . . . does not excuse his failure to comply with the actual requirements of the statute.").

---

Although the affirmation includes a declaration "under penalty of perjury . . . that the foregoing is true and correct," Foster did not sign the affirmation.  *Id.*

[11] Foster argues that this Court should consider that she "was without legal advice" and that this led to the confusion on the 90-day deadline.  Docket Item 16 at 8.  But the lack of the assistance of counsel does not warrant equitably tolling the deadline.  *See Richardson v. Suffolk Bus Corp.*, 2010 WL 2606266, at *6 (E.D.N.Y. June 22, 2010).  Where a party is proceeding *pro se*, the Court must "read [the *pro se* plaintiff's] papers liberally" and "interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1998). But "the fact that a litigant is proceeding *pro se* does not exempt [her] from compliance with the relevant rules of procedural and substantive law."  *Manley*, 2005 WL 2664220, at *1 (alterations and internal quotation marks omitted).

Even construing Foster's papers liberally, there are no extraordinary facts that would justify equitable tolling here.[12]  Nevertheless, in light of Foster's *pro se* status, the Court grants her leave to supplement her amended complaint to demonstrate that equitable tolling applies to her ADA claims.  *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).").

## III.    STATE LAW CLAIMS

Foster also asserts claims under the NYSHRL and asks this Court to exercise supplemental jurisdiction over her state law claims.  Docket Item 5 at 2.  A "district court[ ] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity[ ]' in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 450 (1988)).  And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise

---

[12] Foster asserts that her "[s]evere [d]epression/[p]anic [d]isorder . . . incapacitates her[] from time to time" and "unduly prejudiced her from focusing on preparing her [c]omplaint."  Docket Item 16 at 7-8.  But aside from this vague and conclusory statement, Foster does not connect her illness to the delay in filing her complaint.  And vague and conclusory statements "without a particularized description of how [a] condition adversely affected [a plaintiff's] capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling."  *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also Richardson*, 2010 WL 2606266, at *5 (collecting cases).

jurisdiction over the remaining state-law claims." *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7). For that reason, if Foster does not file a second amended complaint or supplemental submission to demonstrate that equitable tolling applies to her ADA claims, the Court will decline to exercise jurisdiction over Foster's NYSHRL claims, and her NYSHRL claims will be dismissed without prejudice.

## IV.    MOTION FOR CM/ECF ACCESS

Foster asks this Court to grant her permission for electronic case filing through the Court's system ("CM/ECF"). Docket Item 17. The Local Rules of Civil Procedure incorporate by reference the Court's CM/ECF Administrative Procedures Guide ("the Guide"), which in turn provides the requirements and procedures for electronic filing. *See* W.D.N.Y. Local Rule 5.1(a). The Guide allows the Court, in its discretion, to "grant a pro se litigant who demonstrates a willingness and capability to file documents electronically, permission to register to do so." W.D.N.Y. Administrative Procedures Guide for Electronic Filing, Administrative Procedures.

Here, Foster affirms that "[g]aining access to CM/ECF will guarantee that [her] documents are filed on time." Docket Item 17 at 2. But Foster has not demonstrated that she has the necessary technical and equipment requirements for e-filing. Nor does she affirm that she has reviewed the requirements for e-filing and agrees to follow those requirements. The Court therefore declines to exercise its discretion to permit Foster to file her documents electronically and denies her motion without prejudice. To the extent that Foster requires additional time to file documents due to her rural location and transportation difficulties, Foster may ask the Court to extend her deadlines.

**V.     MOTION TO APPOINT COUNSEL**

Foster also asks this Court to appoint her counsel.  Docket Item 21.  In deciding whether to appoint counsel, courts first assess the indigent plaintiff's likelihood of success on the merits of her claim.  *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  If the claim meets this threshold requirement, courts consider a number of other factors, including "the nature of the factual issues the claim presents[,] . . . the plaintiff's apparent ability to present the case[,] . . .  whether appointment of counsel would lead to a quicker and more just result by sharpening the issues and shaping examination[,] . . . [and the plaintiff's] efforts to obtain counsel."  *Id.*

This action was commenced only recently.  The defendant has not yet answered the allegations in the amended complaint, so the only facts upon which this Court may base its decision as to whether this lawsuit is of substance are Foster's bare allegations.  At this stage, the Court lacks sufficient information to consider the factors stated in *Hodge*.  Foster's request for appointment of counsel therefore is denied without prejudice as premature.

<u>**CONCLUSION**</u>

For the reasons stated above, Foster's motion for late filing of her response, Docket Item 18, is GRANTED.  Foster's motions for CM/ECF access, Docket Item 17, and appointment of counsel, Docket Item 21, are DENIED without prejudice.  The defendant's motion to dismiss, Docket Item 11, will be granted unless **within 60 days of the date of this order,** Foster supplements her amended complaint by filing a second amended complaint or submission to demonstrate that equitable tolling applies to her ADA claims.  If Foster needs additional time to file her submission, she may request

extensions of time as needed.  No later than 30 days after any submission to supplement the amended complaint is filed, nfrastructure may answer, move against, or otherwise respond.  If Foster does not supplement her amended complaint or ask for an extension of time within 60 days, Foster's ADA claims will be dismissed with prejudice; her NYSHRL claims will be dismissed without prejudice; and the Clerk of the Court shall close the case without further order.

SO ORDERED.

Dated:   February 18, 2022
             Buffalo, New York


   */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE